The order below is hereby signed.

Signed: June 3 2021



_Elizabeth L. Gunn_
U.S. Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF COLUMBIA

| | |
|---|---|
| In re: | Case No. 21-00005-ELG |
| **Skybridge Spectrum Foundation,**<br>**Alleged Debtor.** | Chapter 11 |

### MEMORANDUM OPINION AND ORDER DISMISSING INVOLUNTARY PETITION

By this Opinion, this Court becomes the latest in a long line of courts – state and federal, trial and appellate – to hear and consider litigation arising from and related to a decades-long dispute between two individuals – Warren Havens and Arnold Leong. In this case, the Court has before it the *Chapter 11 Involuntary Petition Against a Non-Individual* (the "**Initial Petition**") (ECF No. 1) filed on January 5, 2021, by petitioning Creditor Warren Havens (the "**Petitioning Creditor**" and/or "**Havens**") commencing the instant involuntary proceeding against "Skybridge Spectrum Foundation a/k/a SkyTel Joint Venture (with assets outside of California)" (the "**Alleged Debtor**"). The Petitioning Creditor further disclosed that the entities he alleges comprise the SkyTel Joint Venture are "Skybridge Spectrum Foundation ("**Skybridge**"), Verde Systems LLC, Telesaurus Holdings GB LLC, Environmental LLC [the spelling is correct], Environmental-2 LLC, Intelligent Transportation & Monitoring Wireless LLC, V2G LLC, and ATLIS Wireless LLC." Request to Accept Amendment 1 of Jan. 20, 2021 to Form 205 Attached Statements 8

(Jan. 20, 2021), ECF No. 10.[1] However a summons of the Initial Petition was only served on Skybridge. ECF No. 9, 11. No summons was issued, requested, or served in any way on the remaining entities in the Alleged Debtor.

Shortly after service of the summons, Susan L. Uecker, the receiver appointed by the Superior Court of California[2] (the "**Receiver**") for Skybridge Spectrum Foundation, Atlis Wireless LLC, Environmentel LLC, Environmentel-2 LLC, Intelligent Transportation and Monitoring Wireless LLC, Telesaurus Holdings GB LLC, Verde Systems LLC and V2G LLC (together with Skybridge, the "**Receivership Entities**"), by counsel, filed a Notice of Appearance in this case. ECF No. 14. Notably, the Receivership Entities and the Alleged Debtor consist of the same eight entities. *Compare* ECF No. 10-1, at 8 of 9 *with* the Receivership Order (listing same eight entities). In conjunction with her appearance in this case, on January 29, 2021, the Receiver in her official capacity on behalf of the Alleged Debtor filed three pleadings: the *Motion of the Receiver for Alleged Debtor for an Order (I) Dismissing Involuntary Bankruptcy Case, or, in the Alternative, (II) Directing Petitioning Creditor to Post Bond and (III) Transferring Venue to the Northern District of California* (the "**Motion to Dismiss**") (ECF No. 19); the *Motion of Receiver for Alleged Debtor for Order Excusing Compliance with Section 543 of the Bankruptcy Code* (the "**Motion to Excuse**") (ECF No. 21); and the *Declaration of David A. DeGroot in Support of Motion of the Receiver for Alleged Debtor for an Order (I) Dismissing Involuntary Bankruptcy Case, or, in the Alternative, (II) Directing Petitioning Creditor to Post Bond and (III) Transferring Venue to the Northern District of California* (the "**DeGroot Declaration**") (ECF No. 24).[3] The Receiver

---

[1] Other filings uniformly use an "e" instead of an "a" in spelling Environmentel, LLC and Environmentel-2, LLC.

[2] Order Appointing Receiver After Hearing and Preliminary Injunction—Rents, Issues, and Profits (the "**Receivership Order**"), *Leong v. Havens*, Case No. 2002-070640 (Cal. Super. Ct. Nov. 16, 2015), as amended.

[3] In the Receivership Order, the Receiver is authorized to "do all things . . . ordinarily done . . . by owners, managers, and operators of businesses and property similar to that possessed by the receiver" and, further, authorizes the receiver

appropriately filed a notice of deadline to file objections and a notice of hearing to be held on

March 3, 2021 on the Motion to Dismiss and the Motion to Excuse. ECF Nos. 20, 22, and 23.

Thereafter, the Petitioning Creditor filed the following series of pleadings (collectively, the

"**Supplemental Pleadings**"), all of which the Court reviewed prior to the hearing held March 3,

2021 (the "**Hearing**"):

- *Petitioner's Amendment of February 3, 2021 to Form 205 Petition* (Feb. 3, 2021),
  ECF No. 28;

- *Petitioner's Request for Time Extension Due to Health & Other Current Hardships*
  (Feb. 19, 2021), ECF No. 33;

- *Oppositions [sic] Conditional Filing: (A) Initial Partial Request to Enter Order for
  Chapter 11 Relief, and (B) Initial, Partial Opposition to Sheppard Mullin's Filings,
  Subject to Request to Extend & Toll Time* (Feb. 19, 2021), ECF No. 34;

- *Petitioner's Request to Clarify Service Matter* (Feb. 22, 2021), ECF No. 35;

- *Petitioner's Notice Re Docs 33 & 34 as to Planned Corrections and Additions
  Thereto, Additional Information, & Related Matters* (Feb. 22, 2021), ECF No. 37;

- *Petitioner's "Common Statement" in Support of Two Oppositions: 1 to Motion to
  Dismiss, and 2 to the Motion to Excuse & Statement of Good Cause for Time for
  Amended Oppositions* (Feb. 26, 2021), ECF No. 41;

---

to petition the California State Court to "retain legal counsel to assist the receiver with issues arising out of the
bankruptcy proceedings that affect the receivership". Receivership Order, ¶ 14.c. and 25.d., at 2 and 4. The Receiver
is the party upon whom Havens served the Summons in this case, and, as the only entity with authority to act on behalf
of the Alleged Debtor entities, clearly has standing in this case to contest the Petition. Further, as the Court in the
California bankruptcy case noted, when faced with a similar argument as to authority to contest the involuntary
petition, "[a]nd if I need any authority other than common sense, I think I can look to Section 105 of the Code . . . ."
Tr. 5:11-14, *In re Leong P'ship*, Case No. 16-42363 (Bankr. N.D. Cal. Oct. 31, 2016), ECF No. 91.

- *Petitioner's Notice Re US Courts' PACER System Current Inaccessibility* (Mar. 1, 2021), ECF No. 44; and

- *Petitioner's 3-2-2021 Filing Supplementing the Petition with New Facts, and in Further Opposition to the Uecker Motions and Further Support for an Order for Relief or Alternative Order* (Mar. 2, 2021), ECF No. 48.

In response, the Receiver filed her *Reply Memorandum in Support of Motion of the Receiver for Alleged Debtor for an Order (I) Dismissing Involuntary Bankruptcy Case, or, in the Alternative, (II) Directing Petitioning Creditor to Post Bond and (III) Transferring Venue to the Northern District of California* (Mar. 2, 2021), ECF No. 47, which the Court also reviewed prior to the Hearing.

On March 3, 2021, the Court held the Hearing on the Motion to Dismiss and related Supplemental Pleadings, at the conclusion of which, upon request of the Petitioning Creditor, the Court established a briefing schedule for the Petitioning Creditor and the Receiver to file post-Hearing briefs on narrow issues of law pertaining to the Motion to Dismiss. Both parties submitted post-Hearing briefs.[4] Thereafter, the Court issued a further order specifically directing the Petitioning Creditor to re-submit certain exhibits in their entirety due to technological limitations of the Court. *See* Order, ECF No. 72. Those exhibits were submitted on March 30, 2021, at which time the record on the Motion to Dismiss closed (the "**Record**"). *See* ECF No. 76. For the reasons

---

[4] Havens filed the Petitioner's 3-10-2021 Opposition to Motion to Dismiss Supplement (ECF No. 64); Petitioner's 3-10-2021 Opposition to Motion to Dismiss Supplement (ECF No. 65) as supplemented by Submission of Memo of the Website Exhibits Under the Court's Order Doc. 72 (ECF No. 76), as authorized by the Court's order at ECF. 72. The Court notes that including the supplemental submission, the Petitioner has filed over 4,400 pages of documents in this case as of the date hereof.

The Receiver filed a Supplemental Reply Memorandum in Support of Motion of the Receiver for Alleged Debtor for an Order (I) Dismissing Involuntary Bankruptcy Case, or, in the Alternative, (II) Directing Petitioning Creditor to Post Bond and (III) Transferring Venue to the Northern District of California, March 12, 2021, ECF No. 67.

stated herein, the Motion to Dismiss is granted in part, and denied in part as moot. The Petition

will be dismissed.

## I.      Jurisdiction

The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 157(a) and 1334, and

DCt.LBR 5011-1. This is a core proceeding under 28 U.S.C. § 157(b)(2) in which final orders or

judgments may be entered by a bankruptcy judge. This Memorandum Decision sets forth the

Court's findings of facts and conclusions of law pursuant to Rule 7052 of the Federal Rules of

Bankruptcy Procedure (the "**Bankruptcy Rules**," and each individually a "**Bankruptcy Rule**").[5]

## II.      Factual Background

On January 5, 2021, Havens filed the instant Petition against the Alleged Debtor which

consisted not simply of the Petition, but also a five-page document titled "Form 205 Attached

Statements." After submission of the Initial Petition, Havens subsequently filed three separate

"supplements" to the Petition ("the **Petition Supplements**") between February 3, 2021 and

March 2, 2021 (the day before the hearing on the Motion to Dismiss).[6] The Initial Petition and

Petition Supplements contain, at times, contradictory statements or substantial factual differences

as the Petitioning Creditor's theory of the case evolved. The Court's factual findings herein

condense and distill the filings in the Record into a single factual recitation representing the Court's

findings as to the facts relevant to the Motion to Dismiss. There are thousands of pages of

additional pleadings and exhibits filed by the parties which, while reviewed by the Court, are not

in the Record, nor germane to the Motion to Dismiss, and thus not relied upon herein.

---

[5] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of
fact when appropriate. *See* Fed. R. Bankr. P. 7052.

[6] ECF Nos. 10, 28, and 48.

A.  *The Alleged Debtor.*

As set forth in the Initial Petition, Havens asserts that the Alleged Debtor is "Skybridge Spectrum Foundation aka SkyTel Joint Venture (with assets outside California)" Pet. 1. Havens further alleges that "Skybridge Spectrum Foundation is a de jure corporation" and "SkyTel Joint Venture is a de facto joint venture or merger that includes Skybridge Spectrum Foundation operated in commerce and profit business since late 2015." Pet. 2. This is the alternatively explained by Havens as the "debtor is Skybridge Spectrum Foundation with the 'Skytel Joint Venture' which is a de facto joint venture or merger that includes Skybridge Spectrum Foundation. Said debtor is operated in and for commerce and profit business since late 2015 to this day." Form 205 Attached Statements, ECF No. 1, at 5 of 8. Expanding on the identity of the Skytel Joint Venture on January 13, 2021, Havens next describes it as "a de facto joint venture involving Skybridge Spectrum Foundation, chartered as a Delaware nonstock nonprofit corporation, and 7 Delaware for-profit LLCs (commonly called the 'SkyTel Joint Venture')." Declaration Petition for Dissolution Under DGCL § 273 of Skybridge Spectrum Foundation, A Delaware Corporation, and the SkyTel Joint Venture Subsuming the Corporation, *Havens v. Leong*, Case No. 2021-0033 (Del. Ch. Jan. 13, 2021) (attached to DeGroot Decl. as Ex. 22, ECF No. 24-1, at 342). On January 20, 2021, in the first attachment to the Initial Petition, ECF No. 10, Havens further specifies the "component companies making up the SkyTel Joint Venture the SkyTel Joint Venture" as "the lead or subsuming company Skybridge Spectrum Foundation and its joint venturer LLC companies." ECF No. 10-1, at 8 of 9.[7] In the fourth supplement to the Initial Petition filed March

---

[7] The seven "joint venturer LLC companies" are: Verde Systems LLC, Telesaurus Holdings GB LLC, Environmentel LLC, Environmentel-2 LLC, Intelligent Transportation & Monitoring Wireless LLC, V2G LLC, and ATLIS Wireless LLC. ECF No. 10-1, at 8 of 9. As noted above, these alleged joint venturer LLC companies and Skybridge also comprise the Receivership Entities. *See* Attach.1 to the Receiver Order; *see also* ECF No. 28, at 2.

2, 2021 (the day prior to the hearing on the Motion to Dismiss"), Havens again modifies the description, returning to the basic name in the Initial Petition, and listing the Alleged Debtor as "Skybridge Spectrum Foundation aka SkyTel Joint Venture (with assets outside of California)." Suppl. to Pet. & to Opp'n to Mot. to Dismiss 1, ECF No. 48, at 1. However, in the fourth filing, for the first time, Havens made the legal assertion there that the "Debtor is defined in the Petition including its statements in support in this Case as composed of Skybridge Spectrum Foundation *and* the SkyTel Joint Venture that includes said Foundation *and* eight LLCs." ECF No. 48, at 1 n.1. (emphasis added).[8] In other words, by the filing of just the single Petition, Havens seeks to have an order for relief entered as to not only Skybridge, but to each of the other LLCs he identifies and defines as members of the SkyTel Joint Venture.

Beyond the initial moving target as to the complete identity of the Alleged Debtor, other elements of the Petition are equally indistinct. The Initial Petition lists the Alleged Debtor's principal place of business as San Francisco, California. Pet. 1. In the Petition, Havens further alleges that "[o]ver the last 180 days before the filing of this bankruptcy, the debtor had a domicile, principal place of business, or principal assets in this district longer than in any other district." Pet. 2. After the listing of the various alleged claims, Havens next extrapolates that as a result of the alleged claims that he "is eligible to file this petition under 11 U.S.C. § 303(b)." Pet. 2. He claims that "[t]he debtor may be the subject of an involuntary case under 11 U.S.C. § 303(a)." Pet. 2. Then he contends that "[t]he debtor is generally not paying its debts as they become due, unless they are the subject of a bona fide dispute as to liability or amount." Pet. 2. Despite each of these summary statements posited by the Petitioning Creditor, all of the allegations on these issues

---

[8] The alleged Joint Venture appears to include Skybridge and seven LLCs—not eight. *See* ECF No. 28, at 2 (citing ECF No. 10-1). *Compare* ECF No. 76-1, at 1 n.1 (eight LLCs), *with id.* at 16 n.6 (seven LLCs).

are conclusory legal statements on which he relies as fact and presumptively accurate. However, each of these assertion fails not only as a matter of law but are not supported by the facts in this case, as discussed below.

### B.  The California Receiver

By the order appointing the Receiver, the California Superior Court ordered and authorized the Receiver, Susan L. Uecker, to "do all the things, and incur the risks and obligations, ordinarily done or incurred by owners, managers, and operators of businesses and property similar to that possessed by the receiver, *except* the receiver shall not make any capital improvements to the property without court approval." Receivership Order at ¶ 14, at 2 (attached to DeGroot Decl. as Ex. 4, at 2, ECF No. 24-1, at 67 of 372).[9] The Receivership Order also ordered Havens to "[r]efrain from [i]nterfering in any way with the substitution of the Receiver as the individual responsible for the management of the FCC Licenses and the Receivership Entities" as well as from "[c]ommencing, prosecuting, continuing to enforce, or enforcing any suit or proceeding in the name of the Receivership Entities . . . ." *Id.* at 5, ECF No. 24-1, at 70 of 372 (Receivership Order ¶ 28.d, at 5). Skybridge was included among such "Receivership Entities." *Id.* at 6, ECF No. 24-1, at 71 of 372 (Attach. 1. to the Receivership Order). Since the Superior Court of California appointed Susan Uecker as the Receiver for the Receivership Entities, Havens has pursued a pattern of litigation in state courts in California and Delaware, in U.S. Bankruptcy Courts in California, Delaware, and now the District of Columbia, and in the U.S. District Court for the Northern District of California—not including the tribunals considering his actions on appeal. *See generally* Order Declaring Warren Havens a Vexatious Litigant and Requiring Pre-Filing Review,

---

[9] Paragraph 25 of this order instructs the receiver as to her duties to retain or turnover property in the event that property of a Receivership Entity becomes part of a bankruptcy estate. *See id.* at para. 25, at 4.

*Leong v. Havens*, Case No. 20-cv-08091-JST (N.D. Cal. Dec. 21, 2020), ECF No. 37 (attached to

DeGroot Decl. as Ex. 16, ECF No. 24-1, at 263 of 372); Declaration Petition for Dissolution Under

DGCL § 273 of Skybridge Spectrum Foundation, A Delaware Corporation, and the SkyTel Joint

Venture Subsuming the Corporation, *Havens v. Leong*, Case No. 2021-0033 (Del. Ch. Jan. 13,

2021) (attached to DeGroot Decl. as Ex. 22, ECF No. 24-1, at 342 of 372).

### C.  The Petitioning Creditor and His Alleged Claims

The debts alleged by Havens as the basis for the Petition originate from various issues

involved in the litigation and dispute between Havens and Arnold Leong. *See* Order Declaring

Warren Havens a Vexatious Litigant and Requiring Pre-Filing Review at 2, *Leong v. Havens*, Case

No. 20-cv-08091-JST (N.D. Cal. Dec. 21, 2020), ECF No. 37 (attached to DeGroot Decl. as Ex. 16,

at 2, ECF No. 24-1, at 264 of 372). Throughout all of the litigation history and continuing in this

case, Havens alleges and asserts that he served as the "pre-receivership Manager, President and

controlling member of Skybridge and all SkyTel Joint Venture companies (Skybridge and the 7

LLCs)." Pet'r's 3-10-2021 Opp'n to Mot. to Dismiss Suppl. 7, ECF No. 64, at 7. In support of his

position as a creditor of Skybridge/the Alleged Debtor, Havens asserts unsecured claims of a

"minimum" of $230,000. Pet. 3. The debts include (1) $70,000 allegedly advanced by Havens to

Skybridge for attorney fees in a voluntary chapter 11 case in the District of Delaware; (2) $80,000

for salaries and rent owed to him individually and "other;" and (3) $80,000 for claims assigned by

Havens to Polaris PNT 1, PB LLC, and Polaris PNT, PBC, and then reassigned to him prior to the

filing of the Petition. Pet. 3. Havens further contends that aspects of the receivership, as well as

several court orders he disputes, render other parties without authority to dispute any of the debts

he claims to be owed here. *Id.* at 14-18, ECF No. 64, at 14-18. Havens then argues that as no entity

can dispute the validity of the claims, his mere assertion of these alleged debts is dispositive. *See*

*id.* at 16, ECF No. 64, at 16 ("My assertion that these are not reasonably in dispute is based on my

sole authority over these debts."). *See also* Hr'g Tr. 13:24-15:9 (disputing the Receiver's standing

to oppose the Petition and, therefore, the validity of Havens' claims). As discussed herein, none of

the alleged debts are supported by anything other than Havens' bare allegations.

> i        *Havens' $80,000 Claim for Claims Assigned to Him by Polaris PNT 1, PB LLC,*
> *and Polaris PNT, PBC*

Havens describes these assignments as follows:

> Warren Havens in year 2016 assigned certain cash-due claims he had against
> Skybridge Spectrum Foundation and the de facto SkyTel Joint Venture (which
> includes Skybridge Spectrum Foundation) to Polaris PNT, PBC, a Delaware
> statutory public interest corporation commenced by Havens in year 2016. The
> assignments were part of the capitalization of Polaris PNT PBC, and not for
> purposes of this bankruptcy petition in year 2021. Thereafter, Polaris PNT PBC
> assigned a part of those assigned claim to Polaris PNT 1, PB LLC, a Delaware
> statutory public benefit limited liability company commenced by Havens, and such
> assignment also was not for purposes of this bankruptcy petition in year 2021.
> Polaris PNT PB, LLC and Polaris PNT 1, PB LLC assigned back to Havens a
> portion of those claims also not for not for purposes of this bankruptcy petition in
> year 2021.

Form 205 Attached Statements, ECF No. 1, at 4.

When asked to demonstrate the existence of these claims at the Hearing, Havens instead

relied largely on the $70,000 he advanced for attorney fees in the Delaware bankruptcy case in

2016 and did not provide any further information as to the "cash-due" claims. *See* Hr'g Tr. 20:10-

23:15, ECF No. 62.

> ii       *Havens' $70,000 Claim for Attorney Fees He Advanced for the Delaware Case*

Havens argues that the disclosure of his $70,000 payment for Skybridge's counsel in the

Delaware bankruptcy case he initiated constitutes an indisputable claim against Skybridge because

no party objected to that payment. *See* Pet'r's 3-10-2021 Opp'n to Mot. to Dismiss Suppl. 59 n.60,

ECF No. 64, at 59 n.60. In support of this claim, Havens has filed a copy of the disclosure in the

Delaware case, stating that he paid $70,000 for counsel fees there, which notably only discloses

payment and no subsequent repayment or other form of loan obligation on behalf of Skybridge.

ECF No. 76-1, at 22 (Schedule of Retainers Paid to Professionals, *In re Skybridge Spectrum*

*Found.*, Case No. 16-10626 (Bankr. D. Del. Apr. 25, 2016)). Havens also contends that he was

authorized, in the arbitration proceeding, to procure counsel for the Delaware bankruptcy

proceeding, and that unlike his claim for salary and rent, he did not file a claim for the Delaware

attorney fees in the California Case. *See* Hr'g Tr. 19:10-20:1, 20:10-23:15, ECF No. 62. However,

he has neither alleged nor substantiated any further facts or provided any evidence beyond his own

contentions showing that the $70,000 payment was a loan that Skybridge was or is obligated to

repay him.

   iii  *Havens' $80,000 Claim for "Salary, rent, and other due"*

  Havens defends his remaining claims, aside from the Delaware attorney fees and assigned

claims, as being indisputable in light of a judgment he was jointly awarded by a Nevada state court

in *Environmentel LLC v Kurian*, Case No. A-13-688040-C (Nev. 8th Jud. Dist. Ct.). *See* Pet'r's 3-

10-2021 Opp'n to Mot. to Dismiss Suppl. 59-60 n.61, ECF No. 64, at 59-60 n.61. This argument

is nothing more than a red herring or McGuffin. It appears that this is based upon a theory arising

after the attorney representing Havens and Environmentel in the Nevada case asserted a lien

against any sums recovered from the Nevada judgment. Havens then seems to assert that the

Receiver agreed to pay that attorney pursuant to the lien, with the remaining funds (if any)

collected from that judgment going to the Receiver for distribution pursuant to and through the

receivership claims process. Despite the fact that 'his claims against the Receivership Entities

remain unliquidated and disputed, Havens alleges that the agreement by the Receiver to pay the

attorney and then receive any surplus funds thus creates the debt owed him by the Receivership

Entities that comprise the Alleged Debtor. *Id.*, ECF No. 64, at 59-60 n.61. Once again, the only

basis for these claims are Havens' own characterization of the facts and interpretation of the

situation.

Alternatively, Havens makes a claim for "salary and rent" owed by the Receivership

Entities. *See* Pet. 3. However, Havens testified at the Hearing that these same claims were relied

upon as the basis for his standing to file the involuntary bankruptcy case in California against the

"Leong Partnership," *see* Hr'g Tr. 21:6-15, which he alleged to hold as property all the same LLCs

as the Alleged Debtor here except for Skybridge, *see* Official Form 205 – Involuntary Petition

Against a Non-Individual, Leong Partnership, Attached Statement #1 ¶ 9, at 6-7, *In re Leong*

*P'ship*, Case No. 16-42363 (Bankr. N.D. Cal. Aug. 22, 2016), ECF No. 11 (listing the 7 LLCs

other than Skybridge that are the Receivership Entities).[10] As discussed further, *infra*, the

California case was dismissed, in part, because that Court found that "nothing is clear", and that

no viable legal argument was presented to make the entities liable for the rent or salary claims

Havens asserted against the alleged debtor therein. *See* Order Granting Motion for Summary

Judgment at 12-13, 15, *In re Leong P'ship*, Case No. 16-42363 (Bankr. N.D. Cal. Dec. 29, 2016)

(attached to the DeGroot Decl. as Ex. 7, at 12-13, ECF No. 24-1, at 175-76 of 372). *See also* Hr'g

Tr. 21:1-22:5.

### D.  The Alleged Debtor's Alleged Assets

While full statements and schedules would not be required until after entry of an order for

relief, in the Initial Petition and Petition Supplements, Havens has alleged significant facts related

---

[10]  Havens disputes that the alleged Leong Partnership is the same as the Alleged Debtor here. *See* Hr'g Tr. 21:14-15. However, he contended, in the California bankruptcy case, that the Leong Partnership was liable for the Receivership Entities' (referred to there as the "pPNT Companies") debt for salary and rent that he alleged there (and alleges here). *See* Order Granting Motion for Summary Judgment at 12-13, *In re Leong P'ship*, Case No. 16-42363 (Bankr. N.D. Cal. Dec. 29, 2016) (attached to the DeGroot Decl. as Ex. 7, at 12-13, ECF No. 24-1, at 175-76 of 372).

to the assets of the Alleged Debtor, summarized to state that "this case concerns assets that are

FCC licenses." ECF No. 48, at 1. In support of various elements of the Initial Petition, Havens

contends that the Alleged Debtor's assets include FCC licenses "and associated cash and claims

related to the FCC licenses and business transactions with the licenses." ECF No. 10-1, at 9 of 9.

Specifically, Havens describes the situation as follows:

> FCC 'geographic' licenses and claims thereto with situs in most States (not
> California), and in Washington DC and US territories. Licenses are for limited
> FCC-defined use of United States property - radio spectrum, held by the FCC in
> Washington DC. Title to licenses and claims thereto held in Delaware under
> Delaware law and by the FCC in Washington DC. The licenses and claims thereto
> are subject to exclusive FCC jurisdiction under the Communications Act (other than
> in Bankruptcy jurisdiction) and are within a pending FCC investigation under FCC
> order 18-168 and in other pending FCC proceedings. Petitioner Havens has sought
> to assist the FCC in some of these matters in formal filings and is a party in these
> FCC proceedings.

Pet. at 1. Havens later expands on his description by contending that the FCC licenses of the

Alleged Debtor' entities that are within the State of California (and claims thereto) "are not part of

the defined debtor SkyTel Joint Venture," as those assets are under the control of a receiver

appointed by the Superior Court of California. *See* Form 205 Attached Statements, ECF No. 1, at

5-6 of 8. Despite the clear terms of the Receivership Order, Havens nevertheless contends that he

is "the founding and majority or sole lawful owner" of these licenses. Supplement of March. 2,

2021, at 2-3, *In re Arnold Leong*, F.C.C. Case No. 18-168 (Attach. 1 to Am. Pet. & Opp'n to Mot.

to Dismiss), ECF No. 48, at 12-13 of 37. Havens argues that venue in the District of Columbia is

proper because the regulator of the Alleged Debtor's FCC licenses, the Federal Communications

Commission, has its principal place of business in the District of Columbia. *See* Hrg. Tr. 65:12-

72:22. Through these definitional machinations of the Alleged Debtor's assets, Havens makes no

more than a thinly-veiled attempt to claim that the Alleged Debtors' assets are in the District of

Columbia, and are separate and distinct from those FCC licenses subject to the California Receivership Order. This is simply not the case.

### E.    History of Related Bankruptcy Petitions Filed by Havens

As noted above, this is not the first bankruptcy case that Havens has initiated for, or against Skybridge and/or the Alleged Debtor, or that he has attempted to file against the Receivership Entities. In 2016, the U.S. Bankruptcy Court for the District of Delaware dismissed a voluntary petition filed by Havens on behalf of Skybridge, holding that the receivership order issued by the Superior Court of California left Havens without corporate authority to put Skybridge into bankruptcy. *See* Transcript of Hearing at 21:14-24, *In re Skybridge Spectrum Found.*, Case No. 16-10626 (Bankr. D. Del. May 6, 2016), ECF No. 122 [hereinafter "*Skybridge Delaware*"]; Order, *Skybridge Delaware* (May 6, 2016), ECF No. 120; Transcript of Hearing at 45:22-46:2, *Skybridge Delaware* (July 11, 2016), ECF No. 143 (attached to DeGroot Decl. as Ex. 5, at 45:22-46:2, ECF No. 24-1, at 118-19 of 372); Order, *Skybridge Delaware* (July 11, 2016), ECF No. 133.

Havens followed the dismissal in Delaware with an involuntary petition against an entity he described as the "Leong Partnership" and the "Leong Havens Partnership" in the Northern District of California (the "**California Case**"), which is alleged to have consisted, in part, of the Receivership Entities/Alleged Debtor entities <u>except</u> for Skybridge. Involuntary Petition Against a Non-Individual at 1-2, *In re Leong P'ship*, Case No. 16-42363 (Bankr. N.D. Cal. Aug. 23, 2016), ECF No. 1 (attached to DeGroot Decl. as Ex. 6, at 1-2, ECF No. 24-1, at 132-33 of 372).[11] Notably, and in facts that are indisputably similar to the case at hand, the involuntary petition filed by

---

[11] As recounted by the U.S. District Court for the Northern District of California, quoting the California Court of Appeal:

> Undeterred [after the dismissal of the Delaware petition and issuance of a July 2016 order forbidding him to file papers that could be "infer[red] . . . [to] be on behalf of any Receivership Entity"], in

Havens in the California Case alleged similar obligations to Havens and the various Polaris

entities, i.e., wages for his services to the Receivership Entities, that Havens claimed substantiated

his position as a creditor eligible to file the involuntary petition here. *Id.* at 3 (attached to DeGroot

Decl. as Ex. 6, at 3, ECF No. 24-1, at 134 of 372). The bankruptcy court in the California Case

granted the motion for summary judgment to dismiss the case filed by Dr. Leong individually (as

there was no "Leong Partnership" despite Havens' summary allegations to the contrary), finding

that "Havens and Polaris have not presented any viable legal argument which makes the alleged

Leong Partnership liable for the wages and salary purportedly due Havens, and Havens' own

documents demonstrate that a bona fide dispute exists regarding the amount of the tort claim."

Order Granting Motion for Summary Judgment at 15, *In re Leong P'ship*, Case No. 16-42363

(Bankr. N.D. Cal. Dec. 29, 2016) (attached to the DeGroot Decl. as Ex. 7, at 15, ECF No. 24-1, at

178 of 372).

---

August 2016, Havens, purportedly acting for himself and on behalf of Skybridge and a non-Receivership Entity, Polaris PNT PBC (Polaris), filed a petition for involuntary bankruptcy of an entity he called the "Leong Partnership." Havens identified the Commission licenses "held by Susan Uecker as Receiver" as the principal assets of the "Leong Partnership." Havens also asserted the bankruptcy petition was filed "to meet an urgent need for protection of" the Receivership Entities. Havens also argued, to Judge Roesch, that "the involuntary bankruptcy filing against the Leong Partnership affects the Receivership Entities" and created an automatic bankruptcy stay. Three days after his initial filing, Havens dismissed Skybridge as a petitioner in the involuntary bankruptcy action. When the bankruptcy court granted summary judgment in Leong's favor on Havens's and Polaris's involuntary bankruptcy petition, Havens filed an appeal that remains pending before the Ninth Circuit Court of Appeals.

Order Declaring Warren Havens a Vexatious Litigant and Requiring Pre-Filing Review, *Leong v. Havens*, Case No. 20-cv-08091-JST (N.D. Cal. Dec. 21, 2020), ECF No. 37 (quoting *Leong v. Havens*, Nos. A149113, A150785, A150903, A151294, A151848, A151865, A151903, A151978, A151979, A151980, A152835, A153035, A154121, A154122, A154124, A154125, A154619, A154834, A156485, A157199, A157386, A157388, A157856, 2019 WL 5557524, at *2 (Cal. Ct. App. Oct. 23, 2019)) (attached to DeGroot Decl. as Ex. 16, at 3-4, ECF No. 24-1, at 265 of 372).

*F.  The Receiver's Motion to Dismiss*

In answer to the summons and the Involuntary Petition, the Receiver filed the Motion to

Dismiss this case on the following grounds:

> (1) Havens has failed to meet the requirements of section 303 of the Bankruptcy
> Code because (a) Skybridge is a non-profit entity and cannot be subject to an
> involuntary bankruptcy petition under section 303(a) of the Bankruptcy Code; and
> (b) Havens does not hold claims that are undisputed, non-contingent and liquidated;
> (2) the Involuntary Petition has been filed in bad faith; (3) Havens has been
> enjoined from bringing actions like the Involuntary Petition by both state and
> federal courts; and (4) abstention and dismissal under section 305(a) are appropriate
> because continuing the Receivership best serves the interests of Skybridge and its
> creditors.

Mot. to Dismiss ¶ 5, ECF No. 19, at 7-8. Additionally, the Receiver contends that the District of

Columbia is an improper venue, and requests that if the Court does not dismiss the case, it transfer

venue to the U.S. Bankruptcy Court for the Northern District of California or require Havens to

post a $75,000.00 bond under § 303(e) of the Bankruptcy Code. Mot. to Dismiss ¶ 6, ECF No. 19,

at 8.

The Motion to Dismiss not only addresses allegations contained in the Initial Petition but

describes the decades long relationship and legal battle between Havens and Mr. Leong. Mot. to

Dismiss ¶¶ 10-13, ECF No. 19, at 8-10. With respect to this case, the Motion to Dismiss alleges

that Havens filed the instant Petition in order to "interfere" with imminent proceedings to confirm

an arbitration award and judgment in *Leong v. Havens*, Case No. 2002-070640 (Cal. Super. Ct.)

(the "**California State Case**"), which has been pending in Alameda County Superior Court in

California since 2002. Mot. to Dismiss ¶¶ 1, 3, 23-25, ECF No. 19, at 6-7, 13. However, this case

was not the first delay. As the Receiver points out, Havens previously delayed the same

proceedings by improperly removing the California State Case to the U.S. District Court in the

Northern District of California twice over the course of three months in 2018 (after an earlier

removal in 2015). Mot. to Dismiss ¶¶ 18-20, ECF No. 19, at 11-12. Havens then attempted to

remove the case again in 2020, on the day of a scheduled Superior Court hearing on confirmation

of the arbitration award. Mot. to Dismiss ¶¶ 23-24, ECF No. 19, at 13. It appears that this case was

never intended to be anything but yet another pawn in Havens' attempts to circumvent the valid,

and affirmed on appeal, orders in the California State Case.

For purposes of this Memorandum Opinion, the Court focuses on the arguments in the

Motion to Dismiss that the alleged debtor is in fact a non-profit entity, and thus ineligible to be an

involuntary debtor, and that "Havens does not hold claims that are undisputed, non-contingent and

liquidated." *Id.* at 2-3, ECF No. 19, at 7-8. With respect to the latter assertion, the Receiver further

states that "[t]here is no plausible theory of liability that would require Skybridge to pay Havens .

. . . At a minimum, there is a *bona fide* dispute . . . ." *Id.* at 3, ECF No. 19, at 8. The remaining

allegations, as well as the thousands of additional pages of motions, requests, notices exhibits,

and/or other docket entries submitted by the Parties, are neither relevant, nor considered in the

Court's opinion herein, are moot given the Court's findings below, and therefore are not addressed

herein.

### III.    Standard of Review

Unlike a voluntary petition for relief under Title 11, an involuntary petition is an adversarial

process similar to a complaint initiating a lawsuit - the petitioning creditors file the involuntary

petition containing their allegations as to the basis for the relief requested and must serve a

summons on the alleged debtor with a deadline to respond. Fed. R. Bankr. P. 1010(a)

(incorporating Fed. R. Bankr. P. 7004). Bankruptcy Rule 1011(b) directs that Federal Rule of Civil

Procedure 12 applies to any defenses to an involuntary petition. Fed. R. Bankr. P. 1011(b).

Pursuant to Rule 12(b)(6), a complaint, or in this instance, the involuntary petition and any

attachments thereto, state a claim only if it contains "enough facts to state a claim to relief that is plausible on its face." *Webster v. TCA TrustCorp Am.* (*In re Prudhomme Du Hancourt*), 2020 Bankr. LEXIS 3305, at *8-9 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In essence, a motion to dismiss an involuntary petition tests the legal sufficiency of the facts alleged therein. *See Jackson v. Cash (In re Cash)*, No. 16-00663, 2018 Bankr. LEXIS 3322, *6-7 (Bankr. D.D.C. Oct. 29, 2018) (citing *Herron v. Fannie Mae*, 861 F.3d 160, 173 (D.C. Cir. 2017)).

The Court "construes the [involuntary petition] in the light most favorable to the [petitioning creditor] . . . ." *Indus. Bank v. Turner Constr. Co. (In re Shelton Fed. Grp., LLC)*, No. 15-00623, 2017 Bankr. LEXIS 4450, at *9 (Bankr. D.C. Dec. 30, 2017) (citations omitted). The Court thus assumes that all the allegations made in the involuntary petition are true and draws all *reasonable* inferences in the Petitioning Creditor's favor. *See Twombly*, 550 U.S. at 555; *accord Kowal v. MCI Comm'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). But the Court will not "accept inferences unsupported by facts or legal conclusions cast in the form of factual allegations." *Owens*, 897 F.3d at 272 (citations omitted). Nor will the Court "accept as true the [involuntary petition's] factual allegations insofar as they contradict exhibits to the [involuntary petition] or matters subject to judicial notice." *Kaempe v. Myers*, 367 F.3d 958, 963 (D.C. Cir. 2004).

In evaluating the Motion to Dismiss, the Court considers only "the facts alleged in the [involuntary petition], any documents either attached as exhibits or incorporated by reference in the [involuntary petition] and matters about which the Court may take judicial notice." *Tyler v. Uber Techs., Inc.*, 487 F. Supp. 3d 27, 31-32 (D.D.C. 2020) (quoting *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002)); *accord Huang v. Estes (In re 1436 Foxhall Rd. L.L.C.)*, No. 18-00765, 2019 WL 2909107, at *3 (Bankr. D.D.C. July 5, 2019); *Albert v. Chesapeake Bank & Tr. Co. (In re Linton Props., LLC)*, 410 B.R. 1,5 (Bankr. D.D.C. 2009). This includes

"documents appended to [a] motion to dismiss and whose authenticity is not disputed if they are referred to in the complaint and are integral to plaintiff's claim." *Aguirre v. S.E.C.*, 671 F. Supp. 2d 113, 117 (D.D.C. 2009) (citations omitted). "Documents not explicitly referenced in a complaint but on which a complaint 'necessarily relies' are not outside the pleadings, however, and can be considered without converting the motion [to a motion for summary judgment]." *Krukas v. AARP, Inc.*, 458 F. Supp. 3d 1, 14 n.9 (D.D.C. 2020) (citing *Hinton v. Corrs. Corp. of Am.*, 624 F. Supp. 2d 45, 46 (D.D.C. 2009), and then *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). "A federal court may take judicial notice of 'a fact that is not subject to reasonable dispute' if it . . . 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" *Hurd v. District of Columbia*, 864 F.3d 671, 686 (D.C. Cir. 2017) (citing Fed. R. Evid. 201(b)).

## IV.    Discussion

Because the Court will find that (1) the Alleged Debtor is "not a moneyed, business, or commercial corporation" and (2) Havens claims against it are "the subject of a bona fide dispute as to liability or amount," the Court will grant the Motion to Dismiss and dismiss the Petition. Since the Court will find that the Alleged Debtor is not an eligible involuntary debtor, and that Havens is not an eligible petitioning creditor under § 303 of the Bankruptcy Code, the Court will not reach the issues of whether Havens held authority to file the Petition, whether the Petition was filed in bad faith, or whether the District of Columbia was a proper venue.[12]

The Court begins its analysis of the Motion to Dismiss with Bankruptcy Code § 303, which sets forth the requirements for the commencement of an involuntary petition. The elements of both

---

[12] Venue is not jurisdictional. *Moss v. Burton & Norris* (*In re Moss*), 267 B.R. 839, 844 (B.A.P. 8th Cir. 2001) (citing *Neirbo v. Bethlehem Shipbuilding Corp.*, 308 U.S. 165 (1939)).

§§ 303(a) and (b) of the Bankruptcy Code must each be met for the involuntary petition to be appropriate, and for the Court to enter an order for relief. *See* 11 U.S.C. § 303. Subsection (a) establishes against whom an involuntary chapter 7 or 11 case may be filed. Specifically, an eligible debtor is "person, except . . . a corporation that is not a moneyed, business, or commercial corporation, that may be a debtor under the chapter under which such case is commenced." 11 U.S.C. § 303(a). Subsection (b) sets forth the requisite number and type of creditors necessary to commence an involuntary case against an eligible debtor.[13]

The Court finds that Havens has contrived, devised, and continually modified to fit his needs throughout the pendency of this case a series of facts with respect to the identity and nature of the Alleged Debtor and his alleged claims against it in an attempt to meet the requirements of § 303 of the Bankruptcy Code, and thereby qualify to place Skybridge and perhaps other of the Receivership Entities into bankruptcy. Such legal and factual gymnastics are neither appropriate nor supportable by the actual facts in this case. The Court will not permit such attempted manipulation of the bankruptcy system. Under even the most favorable review of a reasonable version of the supportable facts, this case must be dismissed for failure to meet the requirements of § 303 of the Bankruptcy Code.

### A.    The Alleged Debtor is Not an Eligible Involuntary Debtor

Havens has invented the Alleged Debtor he alternatively names as "Skybridge Spectrum Foundation a/k/a SkyTel Joint Venture (with assets outside of California)," Pet. 1, and as "Skybridge Spectrum Foundation with the 'Skytel Joint Venture' which is a de facto joint venture or merger that includes Skybridge Spectrum Foundation," Pet. 5. He conveniently alleges that

---

[13] Three or more holders of "noncontingent, undisputed claims" of at least $16,750 in the aggregate, if there are twelve or more such creditors, and one or more such holders if there are eleven or fewer creditors. 11 U.S.C. § 303(b).

"[s]aid debtor is operated in and for commerce and profit business since late 2015 to this day." *Id.*

The record refutes this. Skybridge is a non-profit corporation and the "SkyTel Joint Venture" exists

not in fact, but solely in the summary allegations of Haven for the purpose of the Petition, i.e., to

attempt to somehow convert Skybridge into a for-profit business entity that is eligible to be an

involuntary debtor.

       i.       *Skybridge is a Not a Moneyed Corporation*

Not all entities that are eligible to file a voluntary petition under Title 11 are eligible to

have an involuntary petition filed against them. *See* 11 U.S.C. § 303(a). Specifically, the

Bankruptcy Code excludes farmers, family farmers, and corporations that are "not a moneyed,

business, or commercial corporation" from a "person" (as that term is defined in § 101(41)) against

whom an involuntary petition may be filed. *Id.* As it is incorporated, Skybridge is a non-profit

entity that is not eligible to be an involuntary debtor. Mot. to Dismiss ¶ 31, at 10, ECF No. 19, at

15 (citing *Official Comm. of Unsecured Creditors v. Archdiocese of St. Paul & Minneapolis* (*In re*

*Archdiocese of St. Paul & Minneapolis*), 888 F.3d 944, 952–53 (8th Cir. 2018)).

"The § 303(a) formulation of 'moneyed, business, or commercial corporation' embraces

only corporations organized for profit." *In re Capitol Hill Healthcare Grp.*, 242 B.R. 199, 202

(Bankr. D.D.C. 1999). In determining whether a corporation is organized for profit, the Court

reviews the corporation's organization under state law as well as the activities in which the

corporation actually engages—i.e., whether the corporation is "operated for pecuniary gain." *Id.*

*See also In re MAEDC Mesa Ridge, LLC*, 334 B.R. 197, 200 (Bankr. N.D. Tex. 2005) (citing

*Strassburger, McKenna, Gutnick & Potter v. Quinn* (*In re Grace Christian Ministries, Inc.*), 287

B.R. 352, 355 (W.D. Pa. 2002)). The mere "participation in commercial activity, by itself, does

not make a non-profit corporation a 'moneyed, business, or commercial corporation.'" *MAEDC*

*Mesa Ridge*, 334 B.R. at 201 (citing *Grace Christian Ministries*, 287 B.R. at 357 ("It is a non

sequitur to conclude that a corporation is a "moneyed, business, or commercial corporation"

merely because it charges and is paid a fee for its services.")). *See also Capitol Hill Healthcare*,

242 B.R. at 201-02 (finding that the business operations, transactions, and payments made by a

non-profit hospital did not constitute operations for pecuniary gain).

Skybridge is a validly incorporated non-profit corporation under Delaware law. The

California State Court describes it as "a "charitable foundation created pursuant to section 501c of

the Internal Revenue Code," which holds licenses donated by Telesaurus, Verde, Intelligent,

Environmentel, and Environmentel-2." *Leong v. Havens*, Case No. A147027, 2017 WL 3633282,

at *2 n.5 (Cal. Ct. App. Aug. 23, 2017) (attached to DeGroot Decl. as Ex. 1, at 4 n.5, ECF No. 24-

1, at 5 of 372 n.5). Further, as proposed counsel for Skybridge in the Delaware Bankruptcy Case

(hired by Havens) informed that Court:

> Skybridge is a 501(c)(3) tax exempt non-profit non-stock Delaware
> Corporation. It was formed in 2006 for charitable, educational and scientific
> purposes including providing programs, education and research that promoted
> public safety, environmental protection and the preservation and sound use of
> scarce public resources.
>
> The main goal of the Debtors' exempt purpose mission and business plan is
> to implement nationwide ubiquitous, including areas not served or reliably served
> by wireless carriers, highly accurate and precise radio based positioning, navigation
> and timing applications benefiting the general public and national welfare. Debtor
> carries out its public interest mission and charter as a private operating foundation
> as defined in the Internal Revenue Code and IRS rules.
>
> Mr. Havens is the Debtors' sole member, sole director and president;
> performing these roles as an unpaid volunteer up to the period of the receivership
> action. Debtor utilized contractors to carry out its development activities.

Tr. 4:11-5:7, Skybridge Delaware (Bankr. D. Del. July 27, 2016), ECF No. 143; *see also* Ex 18 to

DeGroot Decl. 7-19, ECF No. 24-1, at 305 of 372 (IRS Form 990-PF, Return of Private Foundation

(2012), Skybridge Spectrum Foundation 12) (describing its activities related to accomplishment

of its exempt purposes in Part XVI-B); Initial Registration Form at 2, Cal. Registry of Charitable

Trusts (attached to DeGroot Decl. as Ex. 6, at 10, ECF No. 24-1, at 141 of 372 (describing the

Skybridge Spectrum Foundation's exclusive non-profit activities).

Havens does not dispute that Skybridge is organized as a non-profit corporation, but instead

attempts to conflate that status with the "SkyTel Joint Venture" to overcome the Bankruptcy

Code's prohibition of the filing of involuntary petitions against non-profit corporations. *See* Mot.

to Dismiss ¶ 32, at 11, ECF No. 19, at 16 (first citing Pet. § 6, at 1, Skybridge Delaware, ECF

No. 1 (attached to DeGroot Decl. as Ex. 18 § 6, at 1, ECF No. 24-1, at 288); then citing Declaration

Petition for Dissolution Under DGCL § 273 of Skybridge Spectrum Foundation, A Delaware

Corp., and the SkyTel Joint Venture Subsuming the Corp., *Havens v. Leong*, Case No. 2021-0033

(Del. Ch. Jan. 13, 2021) (attached to DeGroot Decl. as Ex. 22, ECF No. 24-1, at 342 of 372)). His

factual and unfounded legal allegations notwithstanding, Havens is estopped from arguing

otherwise as he, through counsel, stated to the Delaware Bankruptcy Court in 2016: "A non-profit

is not subject to an involuntary." Mot. to Dismiss ¶ 32, at 11, ECF No. 19, at 16 (quoting Tr. of

Hr'g at 24:24, Skybridge Delaware (Bankr. D. Del. July 11, 2016), ECF No. 143 (attached to

DeGroot Decl. as Ex. 5, at 24:24, ECF No. 24-1, at 97 of 372). Havens cannot now take a position

inconsistent to that he took in the 2016 bankruptcy case or in his own ongoing Chancery Case

whereby he seeks, *inter alia*, to dissolve the non-profit entity Skybridge.[14] However, Havens

argues that Skybridge's operations subsequent to the appointment of the Receiver have been for

profit. *See* Hr'g Tr. 11:24-13:3 (alleging operations reflecting "[Dr. Arnold]" Leong's claim to

---

[14] Concurrent with the involuntary bankruptcy petition filed here, Havens has petitioned the Court of Chancery of Delaware to dissolve both Skybridge and the SkyTel Joint Venture. *See* Declaration Petition for Dissolution Under DGCL § 273 of Skybridge Spectrum Foundation, A Delaware Corp., and the SkyTel Joint Venture Subsuming the Corp., *Havens v. Leong*, Case No. 2021-0033 (Del. Ch. Jan. 13, 2021) (attached to DeGroot Decl. as Ex. 22, ECF No. 24-1, at 342 of 372).

have private ownership for his private profit and control of Skybridge" at 12:9-12). *See also*

Declaration Petition for Dissolution Under DGCL § 273 of Skybridge Spectrum Foundation, A

Delaware Corp., and the SkyTel Joint Venture Subsuming the Corp. at 8, *Havens v. Leong*, Case

No. 2021-0033 (Del. Ch. Jan. 13, 2021) (attached to DeGroot Decl. as Ex. 22, at 9, ECF No. 24-

1, at 350 of 372):

> Leong took over [Skybridge's] cash and used it for his purposes, via the
> receivership obtained and used solely for Leong's purposes, and caused the FCC to
> terminate [Skybridge's] nationwide FCC licenses since Leong and the receiver he
> solely obtained and controlled, took no action the FCC required to maintain and
> renew the licenses, as the FCC explained in formal orders with opinions.

First, these allegations lack sufficient detail to plausibly establish that Skybridge now engages in

for-profit operations that would modify its non-profit status or that the Receiver permitted Leong

to improperly take Skybridge's cash and terminate its FCC licenses. Second, even if this contrived

allegation was true, it would be "insufficient standing alone to warrant treating the debtor as the

alter ego of [Leong] clad with [his] for-profit status." *Capitol Hill Healthcare*, 242 B.R. at 203

(explaining further, at 204, that "[d]eclaring a corporation to be an alter ego is only available 'as

the justice of the case may require.'"). Havens has not plausibly explained how this alleged

malfeasance by Leong and/or by the Receiver renders Skybridge to be a for-profit entity, or how

an injustice would result if the Court declines to 'categorize it otherwise. *See MAEDC Mesa Ridge*,

334 B.R. at 201 (citing *Grace Christian Ministries*, 287 B.R. at 357). Skybridge is, and always has

been, a non-profit corporation against which an involuntary petition may not be filed, and therefore

this case must be dismissed.

ii.      The "Alleged Debtor is Only Skybridge Because the SkyTel Joint Venture Does Not
         Exist—and an Involuntary Petition May Not be Filed Against Multiple Debtors

In addition to Skybridge, Havens asserts that the debtor also is, or includes, an entity he
describes as the "SkyTel Joint Venture." The alleged "SkyTel Joint Venture" consists of eight
entities: Skybridge and seven separate and distinct LLCs not named elsewhere except as part of
the alleged joint venture. As an initial matter, multiple corporate entities may not be joined in a
single involuntary petition. *See Mannix Invs., Inc. v. Singh* (*In re Western Land Bank, Inc.*), 116
B.R. 721, 723 (Bankr. C.D. Cal. 1990) (noting that § 303 authorizes an involuntary petition only
against "a person" in the singular). However, an involuntary petition may be filed against a bona
fide joint venture partnership of multiple entities. *See In re Pallet Reefer Co.*, 233 B.R. 687, 689,
691 (Bankr. E.D. La. 1999) (finding a Delaware "joint venture partnership" to be an eligible
involuntary debtor); *In re Roxy Roller Rink Joint Venture*, 67 B.R. 474, 477 (Bankr. S.D.N.Y.
1985) (finding a joint venture is an eligible involuntary debtor as a partnership under § 303(b)(3)),
*aff'd*, 67 B.R. 479 (S.D.N.Y. 1986). As Skybridge and the other entities comprising the alleged
SkyTel Joint Venture are Delaware corporations, the Court looks to Delaware law for determining
whether a joint venture *partnership* exists for the purposes of § 303of the Bankruptcy Code:

> Under Delaware law, joint venture liability requires "(1) a community of interest in
> the performance of a common purpose, (2) joint control or right of control, (3) a
> joint proprietary interest in the subject matter, (4) a right to share in the profits, (5)
> a duty to share in the losses which may be sustained." A joint venture may be
> implied or proven by facts and circumstances showing that (a relationship of joint
> venture) was in fact entered into . . . [it] has been broadly defined as an enterprise
> undertaken by several persons jointly to carry out a single business enterprise, not
> amounting to a partnership, for their mutual benefit, in which they combine their
> property, money, effects, skill and knowledge.
>
> "[J]oint venture status is established only where an express or implied contract is
> created." The existence of a joint venture may be determined on a motion to
> dismiss; it is not a precluded question of fact.

*Otto Candies, LLC v. KPMG, LLP*, Case No. No. 2018-0435-MTZ, 2020 WL 4917596, at \*19 (Del. Ch. Aug. 21, 2020) (footnotes omitted); *see also Lichtenstein v. MBNA Am. Bank, N.A.* (*In re Comput. Personality Sys., Inc.*), 284 B.R. 415, 421 (Bankr. E.D. Pa. 2002) (citing, *inter alia*, *Warren v. Goldinger Bros.*, 414 A.2d 507, 509 (Del. 1980)).

In the record herein, Havens has offered only his own statements and filings listing the alleged joint venture and its components. He contends that Leong has established and maintained the SkyTel Joint Venture, as such, and alleges that Leong has confirmed this to the arbitrator in the California State court. Even if this is true, Havens has offered no non-conclusory allegations or evidence that could plausibly establish the existence of a bona fide joint venture—i.e., the existence of the five elements of a joint venture under Delaware law pursuant to an express or implied contract among the alleged joint venturers. *See* Hr'g Tr. 16:10-20-1. The Court concludes that the alleged SkyTel Joint Venture is not in fact a joint venture meeting the requirements of Delaware law. Thus, the SkyTel Joint Venture may not be treated as a partnership and thus eligible as an involuntary debtor under § 303(b)(3) of the Bankruptcy Code. Therefore, because this Court finds that the alleged SkyTel Joint Venture does not exist as such, the individual entities alleged to comprise it may not be alternatively joined as multiple debtors within a single involuntary petition under § 303(a).[15] The SkyTel Joint Venture exists merely as a guise to define an alleged debtor that is "a moneyed, business, or commercial corporation" instead of the non-profit corporation Skybridge. The elimination of the SkyTel Joint Venture as such leaves only Skybridge as the Alleged Debtor here, and the Court has found above that Skybridge is a non-profit corporation and thus not an eligible involuntary debtor under § 303(a) of the Bankruptcy Code.

---

[15] There is no suggestion that there are eligible claims against these entities that would warrant individual involuntary petitions against any of them or that Havens is an alleged creditor of any of these entities other than Skybridge.

**B.**     **The Petitioning Creditor Does Not Hold Undisputed Claims and is Thus Not Eligible to File an Involuntary Petition Against the Alleged Debtor**

Notwithstanding the ineligibility of the Alleged Debtor to be an involuntary debtor, this Case must also be dismissed because the Petitioning Creditor fails to meet the eligibility requirements of § 303(b). The Bankruptcy Code makes clear that an involuntary case may only be commenced

> by three or more entities, each of which is either a holder of a claim against such person that is *not contingent as to liability or the subject of a bona fide dispute as to liability or amount*, or an indenture trustee representing such a holder, if such noncontingent, undisputed claims aggregate at least $16,750 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims. . . .

11 U.S.C. § 303(b)(1) (emphasis added). If there are fewer than 12 holders of claims against the alleged debtor, an involuntary petition may be filed by one or more of the holders of claims if such claimant(s) hold in the aggregate claims exceeding $16,750.00. *See* 11 U.S.C. §§ 303(b)(2). However, assuming *arguendo* that Havens' claims are valid, they are each subject of a bona fide dispute.

The District Court for the District of Columbia has held that a "'*bona fide dispute*' is a legitimate dispute over the validity of the claim or the amount that is owing'. . ." *Radtke v. Cashcetta*, 254 F. Supp. 3d 163, 175 (D.D.C. 2017) (quotations omitted). For purposes of determining whether or not a claim is "subject of a bona fide dispute" in conjunction with an involuntary proceeding under the Bankruptcy Code, the burden initially rests with the petitioning creditor to show that said creditor is qualified under § 303(b)(1). *See Booher Enters. v. Eastown Auto Co. (In re Eastown Auto Co.)*, 215 B.R. 960, 968 (B.A.P. 6th Cir. 1998). A majority of the circuits have adopted an objective test, examining:

"If there is either a genuine issue of material fact that bears upon the debtor's liability, or a meritorious contention as to the application of law to undisputed facts, then the petition must be dismissed." . . . . In determining whether a claim is subject to a bona fide dispute, the bankruptcy court must not resolve any genuine issues of fact or law. . . . it only must determine that such issues exist.

*Riverview Trenton R.R. v. DSC, Ltd.* (*In re DSC, Ltd.*), 486 F.3d 940, 944-45 (6th Cir. 2007) (quoting *In re Eastown*, 215 B.R. at 965 (quoting and citing *In re Lough*, 57 B.R. 993, 997 (Bankr. E.D. Mich. 1986)); then citing *In re Lough*, 57 B.R. at 997; and then citing *In re Everett*, 178 B.R. 132, 139 (Bankr. N.D. Ohio 1994)).[16]

A "genuine issue of material fact" is one that is "a triable, substantial, or real question of fact supported by substantial evidence." *Genuine Issue of Material Fact*, *Black's Law Dictionary* (11th ed. 2019) (referring to the law of summary judgments). *See also In re Byrd*, 357 F.3d 433, 437 (4th Cir. 2004) ("[A] bona fide dispute exists only when there are substantial factual or legal questions that bear upon the debtor's liability."); *B.D.W. Assocs. v. Busy Beaver Bldg. Ctrs., Inc.*, 865 F.2d 65, 66-67 (3d Cir. 1989) (adopting a standard of "substantial factual and legal questions").[17] In the § 303(b) context, a "*meritorious* contention as to the application of law" would be an excessive standard for identifying a dispute as bona fide due to questions of law if interpreted to be a "*valid*" contention. *See D.C. Nurses Assoc. v. Brown*, 153 F. Supp. 3d 1, 3 (2016) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998), and then *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 n.4 (2014)) (contrasting three

---

[16] *See also Fustolo v. 50 Thomas Patton Drive, LLC*, 816 F.3d 1, 7 (1st Cir. 2016); *Crest One SpA v. TPG Troy, LLC (In re TPG Troy, LLC)*, 793 F.3d 228 (2d Cir. 2015); *B.D.W. Assocs., Inc. v. Busy Beaver Bldg. Ctrs., Inc.*, 865 F.2d 65 (3d Cir. 1989); *Subway Equip. Leasing Corp. v. Sims (In re Sims)*, 994 F.2d 210 (5th Cir. 1993); *In re Busick*, 831 F.2d 745 (7th Cir. 1987); *In re Rimell*, 946 F.2d 1363 (8th Cir. 1991); *Bartmann v. Maverick Tube Corp.*, 853 F.2d 1540 (10th Cir. 1988); *Metz v. Dilley (In re Dilley)*, 339 B.R. 1 (B.A.P. 1st Cir. 2006).

[17] One court has suggested that "substantial" imposes a greater requirement than "genuine." *In re Buckeye Activewear, Inc.*, 589 B.R. 772, 775 n.4 (Bankr. N.D. Ohio 2018). This Court finds that "substantial" is a helpful and equivalent description of "genuine," consistent with the sources cited above.

levels of legal questions that are "wholly insubstantial and frivolous," "arguable," and "valid" in the context of subject-matter jurisdiction); *see also Am. Res. & Energy*, 513 B.R. 371, 385 (Bankr. D. Minn. 2014) (rejecting a "meritorious" standard as requiring a determination that an opposing legal position merits a legal victory to find a dispute is bona fide). A "substantial" or "arguable" question of law is one more consistent with identifying a bona fide dispute than one that is valid. *See In re Byrd*, 357 F.3d at 437 ("substantial factual or legal questions"); *Busy Beaver Bldg. Ctrs., Inc.*, 865 F.2d at 66-67 ("substantial factual and legal questions"); *In re Am. Res. & Energy, LLC*, 513 B.R. at 385 (adopting the equivalent "colorable").

The Fifth Circuit has provided additional clarity as to the scope of inquiry at this stage of proceeding, indicating that:

> although the court "may be required to conduct a limited analysis of the legal issues" and its determination "will often depend . . . upon an assessment of witnesses' credibilities and other factual considerations," the court's aim is to "ascertain whether a dispute that is bona fide exists . . . not to actually resolve the dispute."

*Credit Union Liquidity Servs., L.L.C. v. Green Hills Dev. Co., L.L.C.* (*In re Green Hills Dev. Co., L.L.C.*), 741 F.3d 651, 658 (5th Cir. 2014) (quoting *Subway Equip. Leasing Corp. v. Sims* (*In re Sims*), 994 F.2d 210, 221 (5th Cir. 1993) (first alteration in original) (quoting *Rimell v. Mark Twain Bank (In re Rimell)*, 946 F.2d 1363, 1365 (8th Cir. 1991); and then citing *Riverview Trenton R.R. Co. v. DSC, Ltd. (In re DSC, Ltd.)*, 486 F.3d 940, 945 (6th Cir. 2007) ("Importantly, the court need not resolve any genuine issues of fact or law; it only must determine that such issues exist.") (quoting *In re Lough*, 57 B.R. 993, 997 (Bankr. E.D. Mich. 1986)).

Therefore, Havens bears the initial burden of proof to establish that his claims are beyond a bona fide dispute. *See In re Quinto & Wilks, P.C.*, 531 B.R. 594, 605 (Bankr. E.D. Va. 2015). But the creditor typically cannot and does not prove a negative—that there is no bona fide dispute.

The court in *In re American Resources and Energy* has helpfully stated the obvious: "Rather, the creditor must state a claim and the alleged debtor must then contest it by offering substantial competing facts and by raising arguable opposing legal arguments." *See In re Am. Res. & Energy, LLC*, 513 B.R. at 384 (focusing on "the legal viability of petitioning creditor's claims and putative debtors' defenses against them"). Havens alleges three classes of "claims" against Skybridge in support of his status as an eligible petitioning creditor: (i) $70,000 for attorneys' fees he paid in the Delaware Bankruptcy Case for which he alleges Skybridge owes him reimbursement; (ii) $80,000 for the generic category of "salary, rent, and other due"; and (iii) $80,000 of "assigned" claims from three closely-held entities (allegedly previously assigned *by* Havens *to* the same entities) originating from vaguely described "cash-due" obligations of Skybridge originally to Havens.

The Receiver's Motion to Dismiss alleges that each of Havens' asserted claims against Skybridge are disputed, contingent, and unliquidated. Mot. to Dismiss ¶¶ 34-35, at 12-13, ECF No. 19, at 17-18. The Receiver further notes that the U.S. Bankruptcy Court for the Northern District of California previously found the same or substantially the same debts upon which the claims are based to be "not undisputed, bona fide or liquidated." *Id.* ¶ 37, at 13, ECF No. 19, at 18 (citing Order Granting Motion for Summary Judgment at 11-15, California Case (Bankr. N.D. Cal. Dec. 29, 2016) (attached to DeGroot Decl. as Ex. 7, at 11-15, ECF No. 24-1, at 174-78 of 372)). This Court agrees. Havens has failed to clearly state a claim for any of the alleged debts, and even if he had, each claim is subject to a clear dispute.

    i.    *Havens' Claim for Attorneys' Fees.*

With respect to the $70,000 allegedly owed by Skybridge to reimburse Havens for attorneys' fees he advanced for the ultimately dismissed Delaware bankruptcy case, Havens claim

is based solely on his allegations that Skybridge owes him reimbursement. With the Petition, he

filed no loan documents nor any other supporting document that the debt exists from Skybridge to

Havens. A debt must be shown, or plausibly alleged with supporting facts, to exist before it can be

shown, or alleged to be undisputed. Mere contention that an alleged debt is undisputed does not

make such an allegation plausible. Havens contends that this claim was filed in the Delaware

bankruptcy case. Skybridge Delaware, ECF No. 64, at 17. The Claims Register in that case

contains no such claim, and the claim that Skybridge scheduled for Havens in that case (Skybridge

Delaware, ECF No, 116, Schedule E) is shown as unliquidated, for an "unknown" amount, and

only vaguely cites "advancements" among multiple categories of nonspecific bases for that debt.

In other words, Havens has not stated a claim for these attorney fees meeting the standard

established in *Twombly* and *Iqbal*, or that of Bankruptcy Rule 3001(c)(1) (requiring a claimant to

file a copy of a writing where a claim is based on such writing).

Even if Havens had stated a claim for the $70,000 in attorney fees, the Receiver has raised

facts giving rise to a bona fide dispute. Pursuant to the Receivership Order, the Receiver, not

Havens, was in control of Skybridge at the time he initiated the Delaware bankruptcy case. That

order enjoined Havens from initiating "any suit or proceeding in the name of the Receivership

Entities," and provided that the Receiver could petition that court for approval to retain counsel

for services related to bankruptcy proceedings or to seek an order to retain counsel for other

matters. Receivership Order ¶¶ 28(e)(8), 25(d), 18(c). The Receiver contends that Havens could

not have created a liability for Skybridge to reimburse him for attorney fees he paid to initiate the

Delaware bankruptcy case under these circumstances. This Court does not reach whether

Skybridge owes Havens anything in reimbursement for these attorney fees and Havens himself

suggests that the matter is currently before the California State Case. ECF No. 64, at 17. However,

the Court does conclude that Skybridge's liability for these fees is in bona fide dispute. Therefore, this alleged debt does not establish an undisputed claim that makes its holder (Havens) eligible to file an involuntary petition under § 303(b) of the Bankruptcy Code.

      ii.      *Havens' Claim for Salary, Rent, and Other.*

Havens contends that Skybridge owes him $80,000 for "[s]alary. rent, and other due." Pet. 3. Beyond the summary statement of this claim in the Petition, Havens has neither provided nor attached any further detail or support for this claim. At the Hearing, Havens noted that he had filed a claim for salary against the alleged Leong Partnership in the California Case, but that he was relying on the $70,000 claim for attorney fees. Hr'g Tr. 21:6-15. Notably, he did not attach to the Petition, or any of the Petition Supplements, any type of employment agreement, lease, or other rental document, or any other evidence upon with the validity or amount of the claim could be based. Thus, the Court concludes that Havens has not stated a claim for such salary or rent in this case.

Further, even if this Court would conclude that Havens has stated such a claim, it appears that this alleged debt is substantially the same as the claim raised in the California Case. While the bankruptcy court there did not explicitly find the underlying wage claims against the Receivership Entities to be disputed (as opposed to the alleged Leong Partnership), that court noted that Dr. Leong alleged' that no agreement was reached as to the salary and rent, if any, that the Receivership Entities were to pay Havens. *See* Order Granting Motion for Summary Judgment at 13, California Case (Bankr. N.D. Cal. Dec. 29, 2016) (attached to DeGroot Decl. as Ex. 7, at 13, ECF No. 24-1, at 176 of 372); *see also* Hr'g Tr. 22:6-23:13.

Similarly, even if Havens had stated a claim for wages here, the Receiver disputes it, citing a charitable trust registration form Havens signed in 2011, stating that his services to Skybridge

would be on a volunteer basis, as any wages due would be paid by Telesaurus. Mot. to Dismiss ¶

35, at 12-13, ECF No. 19, at 17-18 of 29 (quoting Form 1023, Application for Recognition of

Exemption at 6, Skybridge Spectrum Foundation, Inc. (attached to DeGroot Decl. as Ex. 6, at 23,

ECF No. 24-1, at 154 of 372) ("Mr. Havens receives market-rate compensation from Telesaurus

VPC LLC . . . but does not receive any compensation from Skybridge, in which he serves on a

fully volunteer basis.")). Again, the Court does not reach whether Skybridge owes Havens any rent

or wages, but the Court does conclude that any such liability is in bona fide dispute. Therefore,

this alleged debt does not establish an undisputed claim that makes its holder (Havens) eligible to

file an involuntary petition under § 303(b) of the Bankruptcy Code.

iii.     *Havens' Claim Assigned by Polaris PNT 1, PB LLC, and Polaris PNT, PBC.*

Havens contends that Polaris PNT 1, PB LLC, and Polaris PNT, PBC have assigned him

claims against Skybridge for $80,000 for "claim sums due." Pet. 3. Havens further explains:

> Warren Havens in year 2016 assigned certain cash-due claims he had against
> Skybridge . . . to Polaris PNT, PBC, a Delaware statutory public interest corporation
> . . . . The assignments were part of the capitalization of Polaris PNT PBC, and not
> for purposes of this bankruptcy petition in year 2021. Thereafter, Polaris PNT PBC
> assigned a part of those assigned claim to Polaris PNT 1, PB LLC . . . . Polaris PNT
> PB, LLC and Polaris PNT 1, PB LLC assigned back to Havens a portion of those
> claims also not for not for purposes of this bankruptcy petition in year 2021.

Form 205 Attached Statements, ECF No. 1, at 4. However, Havens has not explained the nature

or basis of his original "cash-due claims" against Skybridge. Nor is it clear that these alleged claims

are attributable to debts of Skybridge, as Havens originally assigned Polaris PNT PBC the debts

of "any or all" of the Receivership Entities. *See* Assignment of Claims and Interests (attached to

DeGroot Decl. as Ex. 6, at 7, ECF No. 24-1, at 138 of 372). Havens asserted that the assignment

was "not for purposes of commencing the [Leong Partnership] case." Official Form 205 –

Involuntary Petition Against a Non-Individual, Leong Partnership, Attached Statement #2, at 1, *In*

*re Leong P'ship*, Case No. 16-42363 (Bankr. N.D. Cal. Aug. 22, 2016), ECF No. 1, at 5 of 11 (attached to DeGroot Decl. as Ex. 6, at 5, ECF No. 24-1, at 136 of 372). However, he further asserted that the assigned claim was against the alleged Leong Partnership rather than the Receivership Entities. *See id.* Based upon the lack of any substantiating details or documents other than Havens' conclusory and self-serving statements in the instant Petition and Petition Supplements, the Court concludes that Havens has not stated a claim for theses "sums due."

The Receiver challenges this claim as precluded by *res judicata* in light of the prior finding of the California bankruptcy court that the claim was disputed. Mot to Dismiss ¶¶ 37-38, at 13-14, ECF No. 19, at 18-19 of 29 (citing Order Granting Mot. for Summ. J. 13, California Case (Bankr. N.D. Cal. Dec. 29, 2016) (attached to DeGroot Decl. as Ex. 7, at 13, ECF No. 24-1, at 176 of 372)). However, the bankruptcy court there specifically found that "nothing [was] clear regarding the alleged *Leong Partnership's* liability for the wages/rent claim." *Id.* (emphasis added). That court did not make an explicit finding as to Skybridge's liability for that claim. Nevertheless, this Court cannot find this alleged claim of Havens/Polaris against Skybridge to be undisputed since the claim has not been stated in the first place. Therefore, this alleged debt does not establish an undisputed claim that makes its holder (Havens) eligible to file an involuntary petition under § 303(b) of the Bankruptcy Code.

## V.    Conclusion

Since the Court finds grounds to dismiss the Petition pursuant to § 303 of the Bankruptcy Code, the Court will not reach § 305 of the Bankruptcy Code. Courts typically resolve a petition under § 303 of the Bankruptcy Code before considering abstention under § 305. *See, e.g.*, *In re Gen. Aeronautics Corp.*, 594 B.R. at 480; *In re Green Hills Dev. Co.*, 445 B.R. 647, 666 (Bankr. S.D. Miss. 2011); *In re AMC Inv'rs, LLC*, 406 B.R. 478, 487 (Bankr. D. Del. 2009). This is because

abstention under § 305 of the Bankruptcy Code is an "extraordinary remedy." *In re General Aeronautics Corp.*, 594 B.R. at 480 (quoting *In re Macke Int'l Trade, Inc.*, 370 B.R. 236, 246 (B.A.P. 9th Cir. 2007)); *In re AMC Inv'rs, LLC*, 406 B.R. 478 at 487-88 (citing *In re Eastman*, 188 B.R. 621, 624 (B.A.P. 9th Cir. 1995). Thus, consideration of a motion to dismiss pursuant to § 305 is disfavored where a case warrants dismissal on alternative grounds.

There are numerous bases upon which this Court must dismiss this case: neither the Alleged Debtor nor Skybridge are eligible involuntary debtors, and even if there were an eligible debtor, the Petitioning Creditor Warren Havens is not an eligible creditor to file an involuntary petition as he has not alleged that he is a creditor with a non-contingent, liquidated, and undisputed debt in a sufficient amount.

In light of the foregoing, it is hereby **ORDERED** that:

1.    Susan Uecker's Motion to Dismiss (ECF No. 19) is **GRANTED** in part as stated herein.

2.    The Petition (ECF No. 1) is **DISMISSED**.

3.    All remaining motions, applications, notices, and other papers filed in this case prior to entry of this Memorandum that request or could be construed to request any reasonable form of relief are **DENIED** as **MOOT**.

[Signed and dated above.]

Copy: All Counsel of Record.

Warren Havens
2649 Benvenue Avenue
Berkeley, CA 94704